1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID JAMES MICHAEL JENSEN,

Defendant.

CASE NO. 2:24-cr-00204-TL-1

ORDER ON DEFENDANT'S
MOTION TO EXCLUDE EXPERT
TESTIMONY

This matter is before the Court on Defendant's Motion to Exclude Expert Testimony from Marco Dkane. Dkt. No. 39. Having considered the motion, the Government's response (Dkt. No. 47), and the relevant record, and finding a pretrial hearing unnecessary,[1] *see* Local Criminal Rule 12(b)(12), the Court GRANTS IN PART and DENIES IN PART the motion.

---

[1] Defendant did not request a pretrial hearing or oral argument (*see* generally Dkt. No. 39) and did not file a reply brief. The Government asserts that the Court should rule on the motion without holding a pretrial hearing. Dkt. No. 47 at 5.

## I.    BACKGROUND

Mr. Jensen is charged in an eight-count Superseding Indictment with five counts of Unlawful Possession of a Firearm, one count of Possession of Controlled Substances with Intent to Distribute (methamphetamine and fentanyl), one count of Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and one count of Possession of Fentanyl with Intent to Distribute for events that occurred on five separate dates. Dkt. No. 26. The Court assumes familiarity with the facts surrounding these events. *See* Dkt. No. 44 at 1–4; Dkt. No. 47 at 1–4.

On May 20, 2025, the Government provided Mr. Jensen's counsel with notice of potential expert testimony by Homeland Security Investigations Supervisory Special Agent Marco Dkane about criminal practices with respect to drugs and guns to be presented at trial. Dkt. No. 47-1 at 2; *see generally* Dkt. No. 47-2. Mr. Jensen filed a motion requesting the exclusion of testimony from Mr. Dkane about common methods and practices of drug dealers. Dkt. No. 39. The Government opposes the motion. Dkt. No. 47.

## II.    LEGAL STANDARD

### A.    Expert Witness Testimony

Federal Rule of Evidence ("FRE") 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

This imposes an obligation on the court to act as a gatekeeper and evaluate the admissibility of expert opinion testimony by ensuring that such evidence is both relevant and reliable. *See United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (quoting *Daubert v. Merrell Dow Pharms.*,

1   *Inc.* ("*Daubert I*"), 509 U.S. 579, 589 (1993)); *see also Pyramid Techs., Inc. v. Hartford Cas. Ins.*

2   *Co.*, 752 F.3d 807, 813 (9th Cir. 2014).

3        "The proponent of expert testimony 'has the burden of establishing that the pertinent

4   admissibility requirements are met by a preponderance of the evidence.'" *United States v.*

5   *Nelson*, 533 F. Supp. 3d 779, 789 (N.D. Cal. 2021) (quoting Fed. R. Evid. 702 Advisory

6   Committee Note to 2000 amendment). In evaluating proffered expert testimony, the trial court is

7   "a gatekeeper, not a fact finder." *Id.* at 788 (quoting *United States v. Sandoval-Mendoza*, 472

8   F.3d 645, 654 (9th Cir. 2006)). "Shaky but admissible evidence is to be attacked by cross

9   examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (quoting

10  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).

11  **B.    Exclusion of Relevant Evidence**

12       Like all evidence, expert testimony must be relevant in order to be admissible. Evidence

13  is relevant if "(a) it has any tendency to make a fact more or less probable than it would be

14  without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid.

15  401; *see also Hankey*, 203 F.3d at 1171.

16       Under FRE 403, however, "[t]he court may exclude relevant evidence if its probative

17  value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the

18  issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

19  evidence." Local Criminal Rule ("CrR") 26(c) also dictates that "[e]xcept as otherwise ordered

20  by the court, a party shall not be permitted to call more than one expert witness on any subject."

21  *See also Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*, No. C17-1115, 2019 WL

22  13241680, at *1 (W.D. Wash. Feb. 20, 2019) (instructing that once one expert "has testified on

23  any subject, that subject may not be covered again by the subsequent expert" pursuant to LCR

24  43(j), the identical civil rule).

### III.    DISCUSSION

**A.    Rule 702 Challenge**

In exercising its gatekeeper role, the Court will evaluate the relevance and reliability of the proffered expert opinion testimony of Agent Dkane.

### 1.    Relevance

"Expert opinion testimony is relevant if the knowledge underlying it has a 'valid . . . connection to the pertinent inquiry.'" *Sandoval-Mendoza*, 472 F.3d at 654 (omission in original) (quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)). "Relevancy simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (omission and alteration in original) (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)), *overruled in part on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc).

### a.    *General Relevance Challenge*

Mr. Jensen concedes (as he must, given the law in this Circuit) that "[e]vidence concerning the general behavior of criminals is sometimes admissible because it 'helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior.'" Dkt. No. 39 at 3 (quoting *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984)). Indeed, the Ninth Circuit explained in *Johnson* that "federal courts uniformly hold . . . that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi [because s]uch evidence helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *Johnson*, 735 F.2d at 1202 (collecting cases); *see also United States v. Nichols,* 786

1  F.App'x. 624, 628 (9th Cir. 2019); *United States v. Anchrum*, 590 F3d. 795, 804 (9th Cir. 2009);

2  *United States v. Freeman*, 498 F.3d 893, 906 (9th Cir. 2007).

3          However, Mr. Jensen challenges the expert testimony proffered by the Government

4  because he asserts that this case involves no complex illegal activities that require expert

5  guidance. Dkt. No. 39 at 3. But the Ninth Circuit has long allowed modus operandi expert

6  testimony in cases that are not complex. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244

7  (9th Cir. 1997) (noting that modus operandi expert testimony is allowed in cases that are not

8  complex) (citing *United States v. Webb*, 115 F.3d 711, 714 (9th Cir.1997)). Further, the Ninth

9  Circuit has declined to make testimony regarding modus operandi evidence per se inadmissible

10  in non-complex drug-trafficking cases, preferring "the broad, case-by-case standard of Rule 403"

11  and pointing out that such testimony has been permitted in non-complex cases. *United States v.*

12  *Sepulveda-Barraza*, 645 F.3d 1066, 1072 (9th Cir. 2011) (citing *United States v. Murillo*, 255

13  F.3d 1169 (9th Cir.2001) and *United States v. McGowan*, 274 F.3d 1251, 1254–55 (9th Cir.2001)

14  (characterizing *Murillo* as "a non-complex, non-conspiracy case")). *See also United States v.*

15  *Ordonez*, 474 F. App'x 670, 671 (9th Cir. 2012) ("expert testimony is admissible in noncomplex

16  drug trafficking cases") (citing *Sepulveda-Barraza*, 645 F.3d at 1072). Complex or not, the Ninth

17  Circuit has repeatedly allowed expert testimony regarding modus operandi in cases where

18  defendants have been charged with possession with intent to distribute drugs or possession of a

19  firearm in furtherance of a drug trafficking crime, as Mr. Jensen is charged in this case. *See, e.g.*,

20  *Nichols*, 786 F.App'x at 628 (modus operandi evidence allowed where defendant was charged

21  with possession with intent to distribute drugs and possession of a firearm in furtherance of a

22  drug trafficking crime); *Sepulveda-Barraza*, 645 F.3d at 1068, 1070 (possession with intent to

23  distribute); *Anchrum*, 590 F.3d at 798 (possession with intent to distribute drugs and possession

24  of a firearm in furtherance of a drug trafficking crime).

1    The Court finds that Agent Dkane's testimony is *generally* relevant and will help the jury

2    understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a).

3              **b.    *Specific Relevance Challenges***

4    The Court will now address specific relevance challenges raised by Mr. Jensen.

5              (1)    <u>Matters of "common knowledge" to jurors</u>

6    Mr. Jensen asserts that parts of Agent Dkane's proffered opinions are "matters of

7    common knowledge familiar to jurors," "at least for those who have read a newspaper, seen a

8    movie, or watched television since 1960 or so." Dkt. No. 39 at 3 n.10. However, "[a]n expert's

9    opinion may overlap with the jurors' own experiences or cover matters that are within the

10   average juror's comprehension, so long as the expert uses some kind of specialized knowledge to

11   place the litigated events into context." *Alston*, 2022 WL 2440077, at *2 (quoting *Viamedia, Inc.*

12   *v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020),*cert. denied,* 141 S. Ct. 2877 (2021)).

13   In this case, the Government proffers that Agent Dkane will testify about the difference

14   between distribution and user amounts of drugs and provide other details relevant to the

15   distribution counts as well as context for the "in furtherance" element of the 924(c) charge. Dkt.

16   No. 47 at 10-11. During a search incident to arrest on April 7, 2022, officers found over $1,000

17   in low-denomination bills on Mr. Jensen, and a search of his vehicle found weapons and a safe

18   containing 528 fentanyl pills, 75 grams of methamphetamine, and 22 grams of heroin in the

19   trunk of a vehicle he had accessed moments earlier. Dkt. No. 47 at 9. The Government asserts

20   that the jury is entitled to hear Agent Dkane's opinion as to, for example, whether 400 pills is a

21   distributor's or user's quantity of fentanyl possession, information that is beyond the common

22   knowledge of most individuals. *Id.* at 11. The Court agrees that this type of information

23   "supplements lay understandings about drug dealing and is a far cry from what is commonly

24   known." *Alston*, 2022 WL 2440077, at *2. The Ninth Circuit has allowed modus operandi

1   testimony that "drug traffickers often employ counter-surveillance driving techniques, register

2   cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently

3   use pagers and public telephones." *United States v. Valencia-Amezcua*, 278 F.3d 901, 909 (9th

4   Cir. 2002) (quoting *United States v. Gil,* 58 F.3d 1414, 1422 (9th Cir.1995)). *See also Nichols*,

5   786 F.App'x at 628 (allowing expert testimony as to whether the amount of drugs recovered was

6   "consistent with what is up for distribution"); *Anchrum*, 590 F3d. at 804 (allowing expert

7   testimony as to why a hypothetical drug dealer would possess a firearm); *United States v.*

8   *Espinosa*, 827 F.2d 604, 611–12 (9th Cir. 1987) (allowing testimony that an apartment was a

9   "stash pad" for drugs and money, that ledgers contained the names of the defendant's cocaine

10  buyers, and that a particular exchange of packages was a drug transaction), *cert. denied*, 485 U.S.

11  968 (1988); *Johnson*, 735 F.2d 1200 (collecting cases allowing expert testimony on general

12  practices associated with drug dealing and other criminal enterprises).

13          Therefore, the Court finds that the testimony about the difference between distribution

14  and user amounts of drugs and other details relevant to the distribution is relevant and DENIES

15  Mr. Jensen's request to exclude this type of evidence from an expert witness.[2]

16                      (2)     Types of controlled substances and drug use

17          Mr. Jensen asserts that the proffered opinion regarding the types of controlled substances

18  largely consists of facts that "are both unassailable and immaterial to any issue in the case.

19  . . . Fascinating, I suppose, in a Discovery Channel documentary way, but wholly unconnected

20  with the facts of this case." Dkt. No. 39 at 4. The Government responds that Mr. Jensen's

21  argument ignores the fact that he was found with the drugs that will be discussed by Agent

22

23  [2] Mr. Jensen's argument regarding common knowledge is discussed in the section of his brief regarding Rule 702.
    Dkt. No. 39 at 3. However, to the extent Mr. Jensen's argument that the helpfulness of the testimony regarding
24  matters of alleged common knowledge 'is doubtful" actually challenges whether the evidence is more prejudicial
    than probative, the Court addresses this argument in Section III.B, *infra*.

1    Dkane during the charged events. Dkt. No. 47 at 11. Some background testimony will be

2    admissible to provide context to the Government's case and may also help explain distributor's

3    or user's quantity of the drugs. The Court finds that testimony about types of controlled

4    substances and how drugs are used is relevant.

5        However, the Court agrees with Mr. Jensen that testimony regarding harm to users or

6    society generally, such as the unique overdose risk of fentanyl, is not relevant. While the

7    Government addresses other arguments Mr. Jensen makes challenging potential testimony

8    regarding fentanyl, it did not address this particular issue. Dkt. No. 47 at 11.

9        Therefore, GRANTS IN PART and DENIES IN PART Mr. Jensen's request to exclude this type

10   of evidence from an expert witness. *See also infra* Section III.B.2.c.

11                    (3)    Common slang terms

12       Mr. Jensen asserts that testimony regarding common slang terms and codes for controlled

13   substances is unnecessary as none of the words at issue are uttered in this case. Dkt. No. 39. The

14   Government acknowledges that this testimony is likely unnecessary in this case and it does not

15   plan to introduce this testimony. Dkt. No. 47 at 11. The Court agrees that this testimony seems

16   irrelevant in this case.

17       Therefore, the Court GRANTS Mr. Jensen's motion to exclude expert testimony regarding

18   common slang terms and codes for controlled substances.

19                    (4)    Legal opinions

20       Mr. Jensen asserts that certain opinions—such as whether fentanyl is a controlled

21   substance—call for a legal conclusion that is for the Court and not the jury. Dkt. No. 39 at 5. The

22   Government responds that "Agent Dkane's testimony that various drugs are controlled

23   substances, while containing within it a legal conclusion, is obviously necessary as a predicate

24   fact to explain why drug dealers do or not do certain things." Dkt. No. 47 at 11–12. The Court

agrees with the Government. Further, it appears Mr. Jensen is not contesting that the drugs at issue in this case are controlled substances under federal law as he has agreed to a jury instruction on to this effect. Dkt. No. 56 at 35.

Therefore, the Court DENIES Mr. Jensen's request to exclude expert testimony on this issue at this time, but Mr. Jensen may raise this issue at trial, if appropriate, and depending on the actual testimony elicited.

(5)    Testimony regarding "in furtherance requirement"

Mr. Jensen asserts that admission of expert testimony on whether a firearm was possessed in furtherance of the charged drug trafficking would violate Rule 702 and "transform § 924(c) into a strict liability crime," relying on *United States v. Rios*, 449 F.3d 1012 (9th Cir. 2006). Dkt. No. 39 at 6. The Government responds, and the Court agrees, that *Rios* is readily distinguishable because the court in that case was addressing the question of the sufficiency of evidence, not the admissibility of modus operandi expert testimony. Dkt. No. 47 at 9.

Mr. Jensen allegedly quotes from *Rios* as follows:

In United States v. Rios, the Ninth Circuit Court of Appeals observed:

Two of our cases have addressed whether the evidence was sufficient to support a conviction for possession of a firearm in furtherance of a drug trafficking crime - Mann and United States v. Krouse, 370 F.3d 965 (9th Cir. 2004). Under these cases, mere possession of a firearm by an individual convicted of a drug crime is not sufficient for a rational trier of fact to convict under § 924(c)(1)(A). *See* Mann, 389 F.3d at 879-80; Krouse, 370 F.3d at 967. Instead, the government must show that the defendant intended to use the firearm to promote or facilitate the drug crime. *See* Krouse, 370 F.3d at 967.

Evidence of this intent is sufficient "when facts in evidence reveal a nexus between the guns discovered and the underlying offense." Id. at 968. Whether the requisite nexus is present may be determined by examining, inter alia, the proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities. *See* Id. **It therefore follows that any expert testimony along these lines is irrelevant and prejudicial because it could be submitted** "in any case in which a drug trafficker possesses a gun, functionally eliminating any independent role for the . . . 'in furtherance' language.

Dkt. No. 39 at 6 (omission in original) (emphasis added). Footnote 22 of the motion cites the source of this quote as *Rios*, 449 F.3d at 1014. *Id.* at 6 n.22. First, while the language in quotation marks in the final sentence of the alleged quotation does appear on page 1014, the remainder of the non-bolded material cited is actually from page 1012 of the *Rios* decision. The Court would not mention this error except the language bolded by the Court—which is quite significant and changes the meaning of the case if actually stated in the opinion—does not exist in the *Rios* opinion. The words "irrelevant" and "prejudicial" do not appear at all in the decision. The bolded language makes it appear that the decision made a finding that the expert testimony was inadmissible because it was irrelevant and prejudicial. But the Ninth Circuit did no such thing. What the *Rios* court actually held was that "expert testimony that drug traffickers generally use firearms to further their drug crimes, standing alone, is not sufficient to establish that a firearm was possession in furtherance of a particular drug crime." 449 F.3d at 1014. As the Government accurately represents, the *Rios* decision was addressing the question of the sufficiency of evidence, not the admissibility of modus operandi expert testimony. [3] Here, the Government will not be relying solely on the expert testimony to establish that Defendant possessed a firearm in furtherance of a drug trafficking crime, but also intends to introduce evidence of the proximity, accessibility, and location of the firearms in relation to the locus of the drug activities. Dkt. No. 47 at 9 (citing *Rios*, 449 F.3d at 1012).

Accordingly, the Court DENIES Mr. Jensen's request to exclude expert testimony on this issue.

//

---

[3] The Court will give defense counsel the benefit of the doubt and assume that they meant to include this as argument rather than as part of the quotation. The Court reminds defense counsel that they owe a duty of candor to the Court, which includes correctly stating the law. Should there be any similar misstatements of the law in future filings by defense counsel, the Court will issue an order to show cause as to why sanctions should not be imposed.

1

2.      **Reliability**

2

Reliability requires the court to assess "whether an expert's testimony has 'a reliable

3

basis in the knowledge and experience of the relevant discipline.'" *AstenJohnson, Inc.*, 740 F.3d

4

457 at 463 (quoting *Kumho Tire*, 526 U.S. at 149). In making its reliability determination, the

5

court is concerned with the soundness of the methodology, not with the correctness of the

6

expert's conclusions. *Id.* Federal Rule of Evidence 702 provides that "an expert may testify 'in

7

the form of an opinion or otherwise' if his or her 'specialized knowledge will assist the trier of

8

fact to understand the evidence or determine a fact in issue.'" *Hankey*, 203 F.3d at 1167 (quoting

9

FRE 702). However, when courts consider the admissibility of testimony based not on scientific

10

testimony but on some "other specialized knowledge," as here, Rule 702 generally is construed

11

liberally. *Id.* at 1168.

12

As a preliminary matter, the Court notes that Mr. Jensen does not challenge Agent

13

Dkane's qualifications as an expert, nor does he dispute that Agent Dkane has specialized

14

knowledge on the topics of types of controlled substances or common characteristics of drug

15

trafficking or drug traffickers and has based his opinions on that knowledge. *See generally* Dkt.

16

No. 39.

17

A witness may be "qualified as an expert by knowledge, skill, experience, training, or

18

education." Fed. R. Evid. 702. Agent Dkane is a twenty-two year veteran of Homeland Security

19

Investigations ("HSI") with the United States Department of Homeland Security. Dkt. No. 47-1

20

at 3. He has been a supervisory special agent for nearly fourteen years. *Id.* His duties as a

21

supervisory special agent include serving as Task Force Commander of a High Intensity Drug

22

Trafficking Area Task Force, supervising investigative activities of narcotics agents and

23

detectives from numerous agencies, instructing HSI investigators in narcotics investigations, and

24

serving as a witness relating to drug trafficking method and trends. *Id.* at 4. His investigative

1   duties include conducting investigations of fentanyl, counterfeit pharmaceuticals, heroin,

2   methamphetamine, cocaine, and MDMA (ecstasy) trafficking. *Id.* He has also served as an

3   instructor for both local and national law enforcement training on counterfeit medications,

4   contraband/narcotics, investigative techniques, and Organized Crime Drug Enforcement Task

5   Forces. *Id.* at 5. He has been involved in the investigation of transnational criminal organizations

6   and drug trafficking organizations. Dkt. No. 47-2 at 2. He has served as an expert witness in jury

7   trials where his testimony included explaining the practices of drug traffickers. *Id.* at 4.

8          The Court finds that the combined aspects of Agent Dkane's background, training and

9   experience clearly meet the requirements of Federal Rule of Evidence 702 and qualify him to

10  testify as an expert in the field of drug trafficking generally based upon his knowledge, skill,

11  experience, training, and education. The Court further finds that Agent Dkane's proffered

12  testimony has a reliable basis in the knowledge and experience of the relevant discipline.

13  **B.      Rule 403 Challenge**

14         "[E]xpert testimony on drug trafficking organizations . . . is admissible when relevant,

15  probative of a defendant's knowledge, and not unfairly prejudicial under the standard set forth in

16  the Federal Rules of Evidence." *Sepulveda-Barraza*, 645 F.3d at 1072. "The relevancy bar is

17  low, demanding 'only that the evidence logically advances a material aspect of the proposing

18  party's case'" *Messick v. Novartis Pharms. Corp.,* 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting

19  *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1315 (9th Cir.1995) ("*Daubert II* ")).

20  However, "[a] court may exclude relevant evidence if its probative value is substantially

21  outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403.

22         **1.      General Prejudice**

23         Mr. Jensen asserts that "[g]eneral expert testimony regarding common methods and

24  practices of drug dealers should be excluded because it gives rise to unfair prejudicial inferences

that outweigh the limited probative value of the evidence." Dkt. No. 39 at 7. He argues that the modus operandi expert testimony "comes very close to criminal profile evidence" which "dovetail[s] with accusations against [him]," will invite the jury to conclude that because he fits a profile, he must be a drug dealer, and gives the prosecution an opportunity to instruct the jury on facts needed to satisfy the elements of the offense. *Id.* at 7–8.

Defendant correctly notes that the Government may not employ a "drug courier profile" as evidence of his substantive guilt. *United States v. Baron*, 94 F.3d 1312, 1320 (9th Cir. 1996), overruled on other grounds by *United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007). While the Court is cognizant of the dangers raised by Mr. Jensen, the risk that unfair prejudice will actually materialize is not so high that it substantially outweighs the probative value of Agent Dkane's testimony. See Fed. R. Evid. 403. Mr. Jensen cites *Freeman* in support of his position, but the concern in that case was that the government agent was testifying as both an expert and a lay witness, which is not the situation here. *See* 498 F3d. at 903–04. Further, the Ninth Circuit, recognizing that "[r]elevant evidence is inherently prejudicial," instructs district courts to be "cautious and sparing" in applying Rule 403 because its "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect*." Hankey*, 203 F.3d at 1172 (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983))." [U]nfair prejudice means 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id* (citing Advisory Committee Notes to FRE 403).

Therefore, the Court DENIES Mr. Jensen's request to exclude the modus operandi testimony of Agent Dkane pursuant to FRE 403 on the basis of general prejudice.

//

//

2. **Specific Prejudice**

   a. ***Comment on a defendant's mental state***

Mr. Jensen correctly asserts that a witness is not allowed to state an expert opinion or inference about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged. Dkt. No. 39 at 8 (citing Fed. R. Evid. 704(b)). However, "the Ninth Circuit has . . . found that . . . 'Rule 704(b) does not bar testimony supporting an inference or conclusion that a defendant does or does not have the requisite mental state, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'" *United States v. Alston*, No. CR22-66, 2022 WL 2440077, at *2 (W.D. Wash. July 5, 2022) (quoting *United States v. Hayat*, 710 F.3d 875, 901 (9th Cir. 2013)); *see also Anchrum*, 590 F.3d at 804–05. The Government represents that it understands the limitation set forth in *Hayat* and *Anchrum* and will adhere to that limitation when presenting Agent Dkane's testimony. Dkt. No. 47 at 12.

Therefore, the Court GRANTS Mr. Jensen's motion but only as to excluding testimony by an expert as to whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged.

   b. ***Fentanyl addiction and deaths***

Mr. Jensen argues that testimony concerning the addictive nature of fentanyl, the deaths it has caused, and the societal devastation resulting from its use does not prove the elements of the charged offense and creates a substantial risk of prejudice. Dkt. No. 39 at 8. The Government did not respond to this argument. The Court agrees that testimony regarding fentanyl statistics or death toll would be more prejudicial than probative and will exclude such testimony. *See Alston*, 2022 WL 2440077, at *6 (government represented it would not introduce such testimony); *United States v. Woolard*, No. CR18-217, 2021 WL 2909160, at *2 (W.D. Wash. July 9, 2021)

(same). The Court will limit the Government to eliciting testimony on the dangers of fentanyl as related to drug trafficking practices and as explanatory information related to law enforcement's handling of the investigation and the seized drugs. *See Alston*, 2022 WL 2440077, at *6; *Woolard*, 2021 WL 2909160, at *2.

Therefore, the Court GRANT IN PART and DENIES IN PART Mr. Jensen's request to exclude expert testimony regarding such evidence.

###    c.    *Testimony regarding types of controlled substances*

Mr. Jensen asserts that evidence about where the overwhelming majority of drugs trafficked in Washington are made, the fact that the drugs are usually smuggled into the United States through states other than Washington, and how they are transported to other localities are "wholly unconnected with the facts of this case." Dkt. No. 39 at 4. The Government did not respond to this argument. The Court agrees that this type of evidence, while perhaps marginally relevant, is ultimately more prejudicial than probative.

Therefore, the Court GRANTS Mr. Jensen's request to exclude this type of testimony pursuant to Rule 403.

## IV.    CONCLUSION

Accordingly, Defendant's Motion to Exclude Expert Testimony from Marco Dkane (Dkt. No. 39) is GRANTED IN PART and DENIED IN PART.

Dated this 28th day of August, 2025.

Tana Lin
United States District Judge